**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| CDL DIRECT, LLC, ELDT DIRECT, LLC, and ELDT CHIMP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, PATRICK D. NEMONS, Director, Office of Safety Programs, FMCSA, in his official capacity,<br><br>Defendants. | Case No. 26-cv-27208-JB |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs CDL Direct, LLC ("CDL Direct"), ELDT Direct, LLC ("ELDT Direct"), and ELDT Chimp, LLC ("ELDT Chimp") (together, "Plaintiffs"), by and through undersigned counsel, pursuant to Fed. R. Civ. P. 65 and S.D. Fla. L.R. 7.1, respectfully move for a preliminary injunction (i) enjoining Defendants Federal Motor Carrier Safety Administration ("FMCSA"), United States Department of Transportation ("DOT"), and Patrick D. Nemons, Director, Office of Safety Programs, FMCSA, in his official capacity (collectively, "Defendants"), from giving further effect to the Notices of Emergency Removal dated August 31, 2026 (the "Notices"), and (ii) directing Defendants to restore Plaintiffs to the Entry-Level Driver Training Provider Registry ("TPR" or "Registry") in the status held before August 31, 2026, pending final resolution of this action. This Motion is supported by the Verified Complaint for Emergency Injunctive Relief [DE 1] ("Compl."), the factual allegations of which are incorporated by reference, and responds as

appropriate to the arguments Defendants previewed in their Memorandum in Opposition [DE 18] ("Opp."). In support, Plaintiffs state as follows:

## I. INTRODUCTION

On the afternoon of August 31, 2026, FMCSA destroyed Plaintiffs' businesses without prior notice or an opportunity to be heard. In a span of six hours and eleven minutes, the agency executed 103 emergency removals from the Registry — an average of 3.6 minutes each — including CDL Direct at 1:40 p.m., ELDT Chimp at 1:53 p.m., and ELDT Direct at 2:49 p.m. Compl. ¶ 2. Before that day, only six emergency removals had occurred in the Registry's entire history. *Id.* No Plaintiff received notice of the English-language-proficiency ("ELP") ground, an opportunity to respond, or a hearing of any kind. *Id*. ¶¶ 2, 53, 68, 85. The removals shut down all three online, theory-only training providers: students cannot complete their training, employees face layoffs, and Plaintiffs face permanent closure. *Id.* ¶ 4.

This Court has jurisdiction. The removals are not "final orders" channeled to the courts of appeals under the Hobbs Act, because FMCSA's own regulation designates only the decision after administrative review as "final Agency action," and no such decision has issued. Compl. ¶ 15. Defendants have taken the position that the removals are final orders reviewable only in the court of appeals, yet became "non-final" once Plaintiffs sought optional administrative review, so that "the order cannot be challenged in any court." Opp. 10 n.5. That reading leaves Plaintiffs with no forum while the deprivation continues — precisely the circumstance the Supreme Court reserved in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 216–18 (1994). District court jurisdiction over Plaintiffs' collateral constitutional and ultra vires claims survives. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 192 (2023); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490-91 (2010); *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958).

On the merits, Plaintiffs are substantially likely to succeed on their procedural due process claims (Counts I, IV, and VII) and their ultra vires claims (Counts II, V, and VIII). There was no emergency. FMCSA conducted a desk audit of historical inspection data and removed 103 providers simultaneously on materially identical Notices premised in part on behind-the-wheel obligations that do not apply to theory-only providers like Plaintiffs. Compl. ¶¶ 29, 111; Opp. 6 n.2. An agency that can plan and execute a coordinated mass removal can afford the brief pre-deprivation notice its own regulations supply in ordinary cases. 49 C.F.R. § 380.723(b)-(c). And FMCSA's "willful disregard" theory cannot be squared with the fact that, from 2016 until 2025, its own personnel were directed *not* to place drivers out of service for ELP violations. Opp. 5. Plaintiffs seek narrowly tailored relief restoring their ability to operate pending final resolution, on such monitoring conditions as the Court deems appropriate.

## II. STATEMENT OF FACTS

**A. Plaintiffs are online, theory-only training providers.** CDL Direct, ELDT Direct, and ELDT Chimp are Delaware limited liability companies whose operations are directed from Miami, Florida. Compl. ¶¶ 5, 7, 9. Each delivers only asynchronous online Class A and Class B theory instruction; none provides behind-the-wheel training, and FMCSA's own Registry records reflect that fact. *Id.* ¶¶ 6, 8, 10, 36-37, 55, 70-71. Each Plaintiff's curricula teach and test the ELP standard of 49 C.F.R. § 391.11(b)(2) — in every stored course version since 2022 for CDL Direct and ELDT Direct, and since ELDT Chimp's September 2024 listing. *Id.* ¶¶ 45-47, 62-63, 79-80.

**B. The August 31, 2026 emergency removals.** On August 31, 2026, FMCSA issued each Plaintiff a Notice of Emergency Removal effective immediately, invoking 49 U.S.C. § 31305(c)(5) and 49 C.F.R. § 380.723(e) and asserting that the public health, interest, or safety and Plaintiffs' "willful disregard" of the regulations required immediate removal. Compl. ¶¶ 39, 58, 72 & Exs. A–C. Apart from names, addresses, identifiers, and driver counts, the three Notices are identical



250270014.2

word for word, and their five crash narratives concern no driver trained by any Plaintiff; the Notices themselves state that "the fact that these crashes occurred is not a basis for this Emergency Removal." *Id.* ¶¶ 29, 49. The Notices rest in part on 49 C.F.R. § 380.707(a), which governs only "accepted applicants for behind-the-wheel (BTW) training." *Id.* ¶¶ 24-26, 111. Defendants have since acknowledged that the behind-the-wheel requirements referenced in the Notices "are not applicable to training providers, such as Plaintiffs, which provide theory-only training." Opp. 6 n.2. No Plaintiff received a notice of proposed removal under § 380.723(b). Compl. ¶¶ 53, 68, 85.

**C. FMCSA's evidentiary basis is unreliable.** FMCSA's audit compared roadside inspection data with Registry certifications and inferred that Plaintiffs failed to provide required instruction solely because some drivers they once certified were later cited for ELP violations. Opp. 6-7. Those drivers represent fewer than 0.5 percent of CDL Direct's approximately 36,000 reported completions (171), approximately 2 percent of ELDT Direct's approximately 2,900 (61), and approximately 0.72 percent of ELDT Chimp's approximately 12,500 (90). Compl. ¶ 3. Eleven of the records are chronologically impossible, showing a citation *before* the training date FMCSA itself recorded. *Id.* ¶¶ 3, 42, 60, 76. The spreadsheets contain no driver-specific evidence of proficiency at the time of reporting, no denominator, no rate, and no published threshold. *Id.* ¶¶ 3, 43, 61, 78. The median gap between training and inspection is 588 days for CDL Direct, 445 days for ELDT Direct, and more than 200 days for ELDT Chimp. *Id.* ¶ 34.

**D. The standard was applied retroactively.** From June 2016 until 2025, FMCSA personnel were directed to cite drivers for ELP violations but not to place them out of service. Opp. 5. Every inspection in FMCSA's datasets occurred on or after June 25, 2025, when ELP failure first became an out-of-service condition, yet 95.9% of CDL Direct's, 93.4% of ELDT Direct's, and 71.1% of ELDT Chimp's listed drivers were certified before that date. Compl. ¶¶ 32-33.

**E. Plaintiffs' administrative requests remain unresolved, and the harm is compounding.** CDL Direct and ELDT Direct requested administrative review under § 380.723(d) on September 1, 2026, the day after removal, and ELDT Chimp did so on September 25. Compl. ¶¶ 98, 143, 188. As of the filing of the Verified Complaint, FMCSA had not scheduled any conference or proceeding, issued any decision, or identified any date by which it would act. *Id.* Plaintiffs also requested reinstatement on October 9 and 14; those requests remain pending. Opp. 7. Meanwhile, as of August 31, 2026, 16,627 CDL Direct students, 656 ELDT Direct students, and 2,520 ELDT Chimp students were enrolled and mid-program and cannot complete their training. Compl. ¶¶ 54, 69, 86. Plaintiffs' shared staff face layoffs, and their businesses face permanent closure. *Id.*

## III. LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent relief; (3) that the threatened injury outweighs the harm relief would inflict on the nonmovant; and (4) that relief would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is the opposing party, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV. MEMORANDUM OF LAW AND ARGUMENT

### (1) THIS COURT HAS JURISDICTION OVER PLAINTIFFS' COLLATERAL CONSTITUTIONAL AND ULTRA VIRES CLAIMS.

#### *A. The emergency removal orders are not "final orders" under the Hobbs Act.*

The Hobbs Act vests exclusive jurisdiction in the courts of appeals over "final orders" issued under chapter 313 of title 49. 28 U.S.C. § 2342(3)(A). But FMCSA's own regulation — and each Notice — designates the decision *after* administrative review as "final Agency action."



250270014.2

49 C.F.R. § 380.723(d)(2); Compl. Exs. A–C at 6. An order subject to agency reconsideration under that framework is interlocutory by the agency's own design, and no decision on administrative review has issued as to any Plaintiff. Compl. ¶ 15; Opp. 7 n.3. Defendants have argued that once a provider invokes optional review, "the original order becomes non-final for purposes of judicial review," so that "the order cannot be challenged in any court." Opp. 10 n.5. A reading that produces a period of unreviewable deprivation should be rejected. *See Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). The vacuum is underscored by § 380.723(d)(1)–(2), which gives FMCSA discretion to call a conference but imposes no deadline — unlike the 30- and 60-day deadlines for ordinary removals under § 380.723(c). Nor is a "final order" coextensive with "final agency action": some agency conduct remains reviewable in the district court in the first instance. *Weaver v. FMCSA*, 744 F.3d 142, 146 (D.C. Cir. 2014); Compl. ¶ 16.

### *B. Plaintiffs' due process claim is "wholly collateral" and cannot be remedied by the prescribed review scheme.*

Even if the removals were final orders, district court jurisdiction survives for claims that are collateral to the statutory review scheme, outside agency expertise, and for which the scheme affords no meaningful remedy. *Thunder Basin*, 510 U.S. at 212-13; *Axon*, 598 U.S. at 186-95. The Supreme Court in *Thunder Basin* expressly reserved the question whether channeling applies where the regulated party faces a "serious prehearing deprivation," declining to reach the due process claim only because the petitioner faced no such deprivation and penalties became payable "only after full review by both the Commission and the appropriate court of appeals." 510 U.S. at 216–18. Here, Plaintiffs suffered a total, immediate loss of the right to operate before any hearing.

*Meaningful review.* Plaintiffs' claim is that they were entitled to process *before* being shut down. "[A] proceeding that has already happened cannot be undone." *Axon*, 598 U.S. at 191. A

court of appeals ruling months hence cannot restore the operations, enrolled students, or workforce lost in the interim. Compl. ¶¶ 54, 69, 86. Moreover, the removals issued without a hearing, an adjudicatory record, or any adjudicatory proceeding, so there is no record of the kind appellate review presupposes. *Id.* ¶ 17. Where no hearing was held and facts are disputed, the Hobbs Act itself sends the case to the district court for fact-finding. 28 U.S.C. § 2347(b)(3). The availability of a stay motion under Fed. R. App. P. 18, Opp. 13, does not cure the absence of a record or restore the process Plaintiffs were denied.

*Collateral and outside agency expertise.* The claim is "wholly collateral" because it does not ask any court to decide whether Plaintiffs violated Part 380; it asks whether the Constitution permitted FMCSA to execute the penalty before hearing from the accused. *Axon*, 598 U.S. at 192-93. Nor does the claim implicate agency expertise: "agency adjudications are generally ill suited to address structural constitutional challenges." *Carr v. Saul*, 593 U.S. 83, 92 (2021).

Authorities such as *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1280 (11th Cir. 2015), and *Doe v. FAA*, 432 F.3d 1259 (11th Cir. 2005), on which Defendants rely, Opp. 11, are distinguishable. *LabMD* involved an ongoing *enforcement proceeding* where the plaintiff had not yet suffered any deprivation. In *Doe*, the mechanics retained their operating authority throughout, and the statute guaranteed a final decision within 60 days — whereas § 380.723(d) sets no hearing right and no deadline. Neither case involved a completed, immediate seizure of operating authority with zero pre-deprivation process, and *Axon* and *Free Enterprise Fund* postdate both.

*Ultra vires claims.* The same analysis applies to Plaintiffs' ultra vires counts. A district court has jurisdiction over an original suit to set aside agency action taken in excess of delegated powers, *Leedom*, 358 U.S. at 188–89, and such review remains available where the statutory scheme does not afford "a meaningful and adequate opportunity for judicial review." *Nuclear Regulatory Comm'n v. Texas*, 605 U.S. 665, 681 (2025). A scheme that, by Defendants' own

account, renders the orders unreviewable in "any court" while administrative review is pending, Opp. 10 n.5, affords no such opportunity.

Even if the orders are not final — eliminating APA review under 5 U.S.C. § 704 — Plaintiffs' due process claims survive independently. A claim "brought directly under the Due Process Clause of the Fifth Amendment . . . and not under the APA" is not subject to the final-agency-action requirement. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1240 (11th Cir. 2003). Section 702 of the APA waives sovereign immunity for non-monetary relief regardless of finality. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1555 (11th Cir. 1985); Compl. ¶¶ 20-23. The contention that the orders are either final (channeled) or non-final (barred by § 704), Opp. 11, thus fails: if the orders are not final, the due process counts survive.

*Exhaustion is not required.* Defendants concede that exhaustion is not required, Opp. 12, and it would be excused in any event. Where an administrative remedy is unavailable, inadequate, or would unreasonably delay relief and cause serious irreparable injury, exhaustion is excused. *Panola*, 762 F.2d at 1556. The factors in *Rogers v. Bennett*, 873 F.2d 1387, 1390 (11th Cir. 1989), are satisfied: Plaintiffs face business destruction no later review can undo, the emergency-removal predicates are plainly lacking, and agency expertise cannot resolve the constitutional adequacy of the process. Section 380.723(d) sets no deadline for a hearing or decision and provides no stay or interim relief, Compl. ¶¶ 94, 97, and Plaintiffs challenge the removal procedures themselves, for which the regulation supplies no administrative remedy. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991).

Nor does a pending administrative request foreclose judicial review. Defendants rely on *Georgia Power Co. v. Teleport Communications Atlanta, Inc.*, 346 F.3d 1047 (11th Cir. 2003). Opp. 12. But *Georgia Power* involved a merits *petition* filed while a reconsideration petition was pending; its rationale — that the agency "might obviate the need *for* judicial *review*," *id.* at 1050

— has no application here, because Plaintiffs' constitutional claims are not coextensive with the administrative requests. No outcome of FMCSA's review can resolve whether the Fifth Amendment required pre-deprivation notice, because the agency lacks authority to adjudicate that question. *Carr*, 593 U.S. at 92. And the administrative route has proven illusory: as of the filing of the Verified Complaint, FMCSA had not scheduled any proceeding or issued any decision on requests pending since September. Compl. ¶¶ 98, 143, 188. Nor should Plaintiffs be forced to elect between remedies: administrative review is optional, Opp. 12, and nothing in § 380.723 treats its use as a waiver of constitutional claims.

## (2) PLAINTIFFS ARE SUBSTANTIALLY LIKELY TO SUCCEED ON THE MERITS.

### *A. Counts I, IV, and VII: Plaintiffs were deprived of protected property interests without due process.*

Each Plaintiff's Registry listing is the functional equivalent of a professional license: without it, no Plaintiff can lawfully provide online theory training or report completions. Compl. ¶¶ 90, 135, 180. Courts have repeatedly recognized the severity of depriving a person of a livelihood without a meaningful inquiry into whether the deprivation is appropriate. *See Nnebe v. Daus*, 931 F.3d 66, 87 (2d Cir. 2019).

Defendants do not seriously contest that Plaintiffs hold a protected property interest in their Registry listings. Opp. 13. The question is what process was due, and the three-factor balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), resolves it in Plaintiffs' favor. The "root requirement" of due process is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Plaintiffs were given none.

*Private interest.* Removal is not a fine or partial restriction; it is the complete cessation of Plaintiffs' business, because without a Registry listing a provider may not lawfully furnish entry-

level training resulting in certification. 49 C.F.R. § 380.609. The deprivation is indistinguishable in practical effect from revocation of an operating license—the paradigm case requiring pre-deprivation process. *Bell v. Burson*, 402 U.S. 535, 539 (1971); *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

*Risk of erroneous deprivation.* This factor is dispositive. FMCSA imputed fault from post-certification driver conduct without controlling for confounding variables: time elapsed between training and citation, total drivers trained (171 of approximately 36,000, 61 of approximately 2,900, and 90 of approximately 12,500), records that are chronologically impossible, whether Plaintiffs actually delivered the required instruction (which their stored course records show they did), and the distorting effect of the 2016-2025 non-enforcement policy on citation data. Compl. ¶¶ 3, 33-34, 47, 62, 80, 101, 146, 191. The Notices also rest on behind-the-wheel obligations that do not apply to theory-only providers like Plaintiffs. Opp. 6 n.2. A brief written submission would have allowed Plaintiffs to produce curricula, certification files, and enrollment totals — exactly the evidence the agency lacked. *Mathews*, 424 U.S. at 335. That FMCSA has already reinstated 14 of the 103 removed providers, Opp. 8, underscores the risk of error inherent in the audit.

Even where emergency action is permissible, due process requires a prompt post-deprivation hearing. *Barry*, 443 U.S. at 66; *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). The regulation under which *Mallen* was upheld guaranteed a decision within 90 days, 486 U.S. at 243; § 380.723 guarantees nothing. It requires no hearing, fixes no date for any conference or decision, and provides no stay. Compl. ¶¶ 96-97. More than seven weeks after removal, no hearing has been offered, and the requests for reinstatement that Defendants tout remain pending. Opp. 7-8. An administrative remedy with no guaranteed timeline is no remedy at all for a business being destroyed in real time.

*Government interest.* Highway safety is weighty, but the relevant question is the marginal interest in dispensing with *any* pre-deprivation process. FMCSA's own regulations provide notice and an opportunity to cure in ordinary removals. 49 C.F.R. § 380.723(b)-(c). The agency controlled the timing and coordinated service on 103 providers for a single date; brief notice would have created no risk. The Notices rely on no crash involving any Plaintiff's trainee and identify no imminent risk from any current trainee. Compl. ¶¶ 103, 148, 193. The cases on which Defendants rely each involved an immediate, identifiable hazard — suspected illegal assault rifles (*Gun South, Inc. v. Brady*, 877 F.2d 858, 867 (11th Cir. 1989)), a criminally indicted bank president (*FDIC v. Mallen*, 486 U.S. 230, 240-41 (1988)), and active mining operations causing ongoing damage (*Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299-300 (1981)). Opp. 15. Here, the predicate conduct is historical, the alleged harm is attenuated, and the determination was not individualized: FMCSA applied one audit formula to 103 providers and issued materially identical Notices. No "substantial assurance that the deprivation is not baseless or unwarranted" exists where the agency never looked *at* the provider. *Mallen*, 486 U.S. at 240.

Cases approving delays in post-deprivation hearings do not change the result. Opp. 16. In *Loudermill*, 470 U.S. at 546-48, the employee received notice and an opportunity to respond *before* termination, and *City of Los Angeles v. David*, 538 U.S. 715 (2003), involved a $134.50 towing fee. Neither sanctions zero pre-deprivation process for the destruction of a business.

### *B. Counts II, V, and VIII: FMCSA acted ultra vires.*

FMCSA's emergency removal authority is not unbounded. Section 380.723(e) permits emergency removal only in cases of "fraud, criminal behavior, or willful disregard of the regulations . . . or in which public health, interest, or safety requires." No Notice alleges fraud or criminal behavior. Compl. ¶¶ 115-116, 160-161, 205-206. Plaintiffs identify the very statute FMCSA invoked, 49 U.S.C. § 31305(c)(5), and the only removal process established under it, 49

C.F.R. § 380.723. *Id.* ¶¶ 106-110. Ultra vires review reaches action that is "patently a misconstruction" of governing provisions. *Fed. Express Corp. v. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022). The Notices rest their findings and the willfulness determination on § 380.707(a)'s behind-the-wheel obligations, Compl. Exs. A–C ¶¶ 6.d, 6.i, 6.l, 7.a, which do not apply to theory-only providers. Opp. 6 n.2. The Notices' own definition of "material deficiency" is not met, because FMCSA made no finding that any Plaintiff's curriculum failed to instruct on ELP requirements. Compl. ¶¶ 118, 163, 208. The "willful disregard" predicate cannot be satisfied where FMCSA found willfulness without any evidence of intent — no review of curricula, no interviews, no prior warning — against the backdrop of its own directive that ELP violations not result in out-of-service orders. *Safeco Ins. Co.* of *Am. v. Burr*, 551 U.S. 47, 57 (2007). The "public health, interest, or safety" predicate was applied without the individualized determination the regulation's structure requires; construing § 380.723(e) to permit categorical mass removals swallows the notice-and-cure rule of § 380.723(b)-(c). And § 31305(c)(5), which authorizes the Secretary to require providers "to demonstrate that the training meets the requirements of the regulations," cannot authorize a process affording no opportunity to demonstrate anything before the penalty attaches.

Federal agencies possess only the authority Congress has conferred upon them. *City of Arlington v. FCC*, 569 U.S. 290, 296–97 (2013); *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 2019 WL 13203852, at *22 (S.D. Fla. Sept. 30, 2019). The pace and scale of the mass action — 103 emergency removals in six hours and eleven minutes — are inconsistent with the individualized emergency determination § 380.723(e) requires. Compl. ¶¶ 30-31. Because none of the predicates of § 380.723(e) is present, the exception never opened and the graduated process of § 380.723(b)–(c) remained mandatory. FMCSA did not lawfully dispense with that process; it simply did not follow it. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954); Compl. ¶¶ 107-109.

**(3) <u>PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT AN INJUNCTION.</u>**

Plaintiffs face irreparable harm on multiple independent grounds. First, the loss of the constitutional right to procedural due process before deprivation of a protected property interest is irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Second, because sovereign immunity bars damages and Plaintiffs seek only nonmonetary relief under 5 U.S.C. § 702, denial of an injunction forecloses all relief, making the injury legally uncompensable. Compl. ¶¶ 21-23, 128; *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013).

Third, the harm is ongoing and compounding. While Plaintiffs remain removed from the Registry, they cannot lawfully deliver training at all, as any training conducted after the removal date is invalid by operation of 49 C.F.R. § 380.723. As such, Plaintiffs cannot enroll or certify trainees — their core business — and more than 19,000 students enrolled mid-program as of August 31, 2026 cannot complete their training. Compl. ¶¶ 54, 69, 86. Plaintiffs' shared staff face layoffs, their monthly fixed obligations continue, and the loss of students, goodwill, and market position cannot be recovered. *Id.* ¶¶ 127, 172, 217. Economic injury threatening the existence of a business is irreparable. *Odebrecht*, 715 F.3d at 1289.

Plaintiffs have also acted diligently. CDL Direct and ELDT Direct sought administrative review the day after removal, ELDT Chimp did so on September 25, and Plaintiffs sought reinstatement on October 9 and 14. Compl. ¶¶ 98, 143, 188; Opp. 7. Plaintiffs filed suit on October 14 only after the agency left those requests unanswered. A party that first pursues the administrative avenue the agency itself offers is not dilatory. *Cf. Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (five-month unexplained delay).

**(4) <u>THE BALANCE OF HARMS AND THE PUBLIC INTEREST FAVOR RELIEF.</u>**

The balance of equities favors Plaintiffs, who face total business destruction, while restoring the status quo pending review would impose no comparable harm on the government. Compl. ¶¶ 129, 174, 219. Assertions that any injunction harms the government, Opp. 19-20, rest on cases — *Trump v. CASA, Inc.*, 606 U.S. 831, 860 (2025), and *Maryland v. King*, 567 U.S. 1301 (2012) — that address enjoining duly enacted statutes and threshold jurisdictional error, not interim relief from a procedurally defective agency order. There is no cognizable governmental interest in enforcing an unconstitutional procedure.

The public interest is "always" served by preventing the violation of constitutional rights. *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *see KH Outdoor*, 458 F.3d at 1272. Thousands of Plaintiffs' students cannot complete federally mandated training, the mass removal of providers on a previously uncommunicated ground chills the regulated community, and regulatory integrity is served by requiring FMCSA to follow its own graduated procedures under § 380.723(b)–(d). Compl. ¶¶ 54, 69, 86, 130.

Finally, the safety risk from interim relief is minimal and manageable. *Plaintiffs have already submitted corrective actions and reinstatement requests,* Opp. 7, and do not object to an order conditioning reinstatement on enhanced monitoring, periodic reporting, documented ELP instruction consistent with Appendices A and B, and audit access. That FMCSA has already restored 14 removed providers, Opp. 8, confirms such tailored relief is administrable and consistent with the agency's safety mission.

**(5) <u>NO BOND, OR A NOMINAL BOND, SHOULD BE REQUIRED.</u>**

Under Rule 65(c), the amount of security is within the Court's discretion, and the Court "may elect to require no security at all." *Boggs Contracting, Inc. v. Freismuth*, No. 6:21-CV-2088-

CEM-EJK, 2021 WL 6755466, at *5 (M.D. Fla. Dec. 27, 2021). Plaintiffs seek only nonmonetary relief against federal agencies and an officer, and Defendants will suffer no cognizable financial harm from temporary restoration of the status quo ante.

## CONCLUSION

For the foregoing reasons, Plaintiffs CDL Direct, LLC, ELDT Direct, LLC, and ELDT Chimp, LLC respectfully request that this Court: (a) set this matter for an expedited hearing at the earliest practicable date; (b) direct removal from the public Registry record of any designation regarding any Plaintiff indicating emergency or involuntary removal; (c) issue a preliminary injunction enjoining Defendants from giving effect to the August 31, 2026 Notices of Emergency Removal and maintaining Plaintiffs' listings on the Registry pending final resolution of this action, on such monitoring and reporting conditions as the Court deems appropriate; (d) declare that certificates of completion issued by Plaintiffs before August 31, 2026 remain valid and shall not be rejected, revoked, or re-examined on the ground of the removals; (e) waive bond or require only a nominal bond; and (f) grant such other and further relief as the Court deems just and proper.

Dated: October 27, 2026

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Ralf R. Rodriguez*

**Ralf R. Rodriguez**
Florida Bar No. 138053
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2750
Miami, Florida 33131
Telephone: (305) 442-6540
Facsimile: (305) 442-6541
ralfrodriguez@foxrothschild.com

*Counsel for Plaintiffs CDL Direct, LLC, ELDT Direct, LLC, and ELDT Chimp, LLC*

**CERTIFICATE OF GOOD FAITH CONFERRAL**

Pursuant to S.D. Fla. L.R. 7.1(a)(3), I HEREBY CERTIFY that on October 27, 2026, counsel for Plaintiffs Ralf R. Rodriguez conferred with counsel for Defendants, Assistant United States Attorney Alexander N. DerGarabedian, by telephone in a good faith effort to resolve the issues raised in this Motion, but the parties were unable to resolve them.

*/s/ Ralf R. Rodriguez*
Ralf R. Rodriguez

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

**Alexander N. DerGarabedian, Esq.**
Assistant United States Attorney
Court ID A5503439
United States Attorney's Office
Southern District of Florida
500 East Broward Blvd., Suite 700
Fort Lauderdale, Florida 33394
Telephone: (954) 660-5792
E-Mail: Alexander.DerGarabedian@usdoj.gov
*Counsel for Defendants*

*/s/ Ralf R. Rodriguez*
RALF R. RODRIGUEZ